that is 69.36936. Thank you. May it please the Court, I'm Lawrence Stern here for Oz's John Rakhmatov. This is a motion for a certificate of appealability in a case where I submit to you it's already been granted by the district court below. After the district court refused to accept a reply to the government's opposition to the motion, refused to hear oral argument, refused to put into evidence, into the record the new evidence that was the basis for the 2255 motion. Is your position, sir, that the denial of an opportunity to file a reply in support of a 2255 petition is a due process violation? It wasn't only that, Your Honor. Okay. But stand in line. It was all these other things which I'm reciting where there was essentially no proceeding at all on the basis of the motion. And that, of course, contradicts the Garza against Idaho, which says notwithstanding a waiver of post-conviction relief in a plea agreement, a litigant has a right to a proceeding. Because, of course, there are exceptions to those waivers. The waivers don't apply when there's been government deception in the procurement of the waiver. The waiver doesn't apply. So can we just start off? Your argument is that there was exculpatory material. Is that right? Yes. Okay. But your client admitted in the plea agreement to having funded ISIS. Is that correct? No. That's not what he admitted to supplying material support by making a $400 contribution at the behest of his employer to send a man to Syria to fight against Bashir Assad, who was murdering fellow Muslims there. So the IT party was code for ISIS-related fundraising? The government always alleged that with absolutely no support at all. And you can – What about your expert reports that Choyona had this alternate meeting? You tried to make this argument for the district court, and it didn't prevail. Is that correct? I'm sorry, Your Honor. I didn't hear the beginning of your question. Didn't you already tell the district court at sentencing via expert reports the same thing that you are asking us to find, that this Choyona, or however you pronounce it, has an alternate meeting? Did the court already consider and reject this meeting? Yes, but we didn't have the evidence that the government concealed establishing or helping to establish that Choyona is not a code word for an ISIS fundraising organization or cell. It is indeed what our experts said in the filings we made. It is a traditional Uzbeki Muslim charitable organization, and their own cooperating witness testified to that in a trial of a co-defendant in the case. It is a social charitable organization. Its goal is to send people to fight against Assad, who was murdering Muslims in Syria. Mr. Stern, what I'm not certain of is how does that affect the fact that your client pleaded guilty? I mean, what is the difficulty with the nondisclosure of this item? He's asking for a new sentence where a fair judge, not the district judge in this case, but a new judge who's fair will look at this new evidence that Choyona is not the code word for the cell. But what? And won't impose the terrorist enhancement, which doubled his guideline sentence from 6 years to 12 1⁄2. That's the whole argument here, that he was unfairly sentenced because we didn't have this evidence where my own client, where he uses his own words, can we gather money for the Tashkent Tea House, Tashkent being the capital of Uzbekistan, and he talking to a friend or a person who was collecting money for the Tashkent Tea House. That's part of the Muslim's obligation. The government concealed that. So is he arguing that he didn't provide material support to what he knew was a terrorist organization? He did in the one instance that he pleaded guilty. But the government alleged that he'd been doing this all along for years because he was part of a tea house, and the tea house is a cell, therefore, he deserves the terrorist enhancement because he's been doing this for years. Thank you so much. Thank you. We'll hear from the government now. If I could start off, is your argument primarily on the merits in this, or are you also putting forward the position that it's been waived because of his plea agreement? It was a little lighter than what we usually get. It was just a footnote. Your Honor, we're not relying on the plea agreement in this particular circumstance. Our argument is primarily on the merits. The government did not argue that if a conversation were truly braided, that the waiver and the plea agreement would bar that. However, the conversation that Mr. Stern is referencing is not braided. It's not exculpatory, and that's the case for two reasons. Number one is the reference to Tashkent Tea House in the WhatsApp conversation with Zakharov. There's no indication in that message that he's referring to a social club in Uzbekistan as opposed to what Khabibov testified at a co-defendant trial, Kasimov trial, was a code word that was used by members of the conspiracy to refer to ISIS. And it is also not exculpatory, Your Honor, because nothing about that communication, that reference to Tashkent Tea House, undermines the stipulation in the plea agreement that for several years prior to February of 2015, the Rakhinev had provided money to fighters in Syria and to their families and to widows left behind. So for both of those reasons, the district court didn't view this additional information as something that was either exculpatory or would change his view of sentencing. And you can tell because he said at the transcript of the argument that sometimes different words have different meanings using Shakespeare's reference to a nunnery versus a whorehouse. And in this particular instance, there was no evidence that when Rakhinev referred to Tashkent Tea House that that was not a reference to ISIS. And, in fact, there was evidence in support of the notion that Rakhinev was, in fact, using the word shoyhana or tea house the same way that members of the conspiracy were using it. And that evidence comes from the later conversation the following month between Habibov and Rakhinev where they were discussing raising money for Sadat Rakhinev's travel to Syria to join ISIS. And Rakhinev explicitly agreed in the pre-agreement that he knew that Sadat Rakhinev would travel to Syria to join ISIS. Can I ask, and I don't want to interrupt your train of thought, but I am interested in what work you think the search warrant affidavit does where the government had the Tashkent Tea Party text in its possession. Was your friend on the other side also have similar notice? Your Honor, I do think that this is a communication that the government should have produced. And we went back and we looked at it. And as far as I can tell, the reason why we didn't produce the full underlying communication, including the word Tashkent, is because when we saw that this was Zakharov's phone, we put it in the category of 3,500 materials that were going to be produced in advance of trial because Zakharov was a government trial witness. And we dismissed the fact that even within the contents of that phone, there was this separate communication between Rakhinev and Zakharov that separately fell within Rule 16 and should have been produced. So I do concede that, Your Honor. But we did not willfully hide that communication as the defendant is now alleging and the fact that we relied on it in a search warrant affidavit and then turned that search warrant affidavit over to the defense indicates that the government wasn't trying to hide or conceal this conversation. We did bracket out the word Tashkent. That is true. And my understanding is that the appeant understood all of the different references to Troihanov within Zakharov's own communications to all be referring to the same thing. So at the very least, they were on notice that it existed because of the – even with respect to the blackout. They certainly were. And not only that, but they also, as Your Honor mentioned, advanced this argument to the district court as sentencing, that it was just charitable purposes related to Uzbeki fundraising and was not specific to ISIS. But there's also – I just want to – if I can just complete the point, Your Honor, that I was making. So in that communication between Habibov and Rakhinev, which Rakhinev concedes was related to fundraising for ISIS, when he agreed to provide the money, he said, okay, I'll send it to Zakharov. Habibov had not told him or mentioned anything about that the money should go to Zakharov. And the government argued based on that that the fact that Rakhinev was sending the money to Zakharov indicated that his prior conversation with Zakharov also related to fundraising for ISIS. But even if that weren't the case, it's not material, and it's not material because the terrorism enhancement wasn't based on the other contributions for ISIS. The government argued consistently throughout its briefs and its oral argument in the sentencing hearing that the terrorism enhancement was warranted because Rakhinev was raising money to send a fighter armed with money for a weapon to fight for ISIS, not because of the other contributions that he made. We did argue at the 3553A factor that the other contribution warranted a significant sentence. But the district court in this case also sentenced a different individual, Kasimov, who the government conceded was not a member of the Tea Party, had made no other contribution besides the contribution to Sadat Makharov to fight for ISIS. And that defendant received a sentence of 180 months, more than Rakhinev did here. And this court three weeks ago affirmed the application of the terrorism enhancement to Kasimov. And I can give you that citation. So I think we have heard your argument, and we appreciate it. We will take the case and the matter under advisement.